UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| JOSE JULIAN MORENO RAMIREZ<br>Petitioner,<br><br>v.<br><br>J.L. JAMISON, *in his official capacity as Warden of Federal Detention Center, Philadelphia*; BRIAN MCSHANE, *in his official capacity as Acting Philadelphia Field Office Director, United States Immigration and Customs Enforcement*; TODD LYONS, *in his official capacity as Acting Director of Immigration and Customs Enforcement*; KRISTI NOEM, *in her official capacity as Secretary of the Department of Homeland Security*; PAMELA BONDI, *Attorney General of the United States*,<br>Respondents. | :<br>:<br>:<br>:  No.   2:25-cv-7346<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

_____

**OPINION**
Petition for Writ of Habeas Corpus, ECF No. 1 - Granted

**Joseph F. Leeson, Jr.**                                                                                    **January 26, 2026**
**United States District Judge**

I.   **INTRODUCTION**

Petitioner Jose Julian Moreno Ramirez is a native of Colombia who was recently detained by the Department of Homeland Security ("DHS") under the Immigration and Nationality Act ("INA") while his asylum application was pending. Before the Court is Moreno Ramirez's 28 U.S.C. § 2241 petition challenging his detention. He argues that his mandatory detention by DHS pursuant to 8 U.S.C. § 1225(b)(2), a provision of the INA, is based on an incorrect interpretation of the statute. Moreno Ramirez also contends that mandatory detention without bond under Title 8 U.S.C. § 1225(b)(2) is a violation of INA bond regulations, his due process rights, and the Administrative Procedure Act ("APA"). For the reasons set forth below, the Court grants his petition.

1

## II.     BACKGROUND

### A.      Factual Background

Moreno Ramirez is a native of Colombia. *See* Pet. ¶ 18, ECF No. 1. He entered the United States on November 7, 2022, and was detained by Customs and Border Patrol ("CBP"). *See id.* ¶ 19. Following a brief detention, Moreno Ramirez "was paroled into the United States under INA § 212(d)(5)(A)."[1] *Id.* ¶ 20, Ex. C. He resided in Monroe County, Pennsylvania, where he lived with his minor child, who is a United States citizen. *See id.* ¶ 21. He currently has a pending application for asylum and received work authorization and a Social Security number. *See id.* at 2, ¶ 22, Ex. D.

On December 26, 2025, Moreno Ramirez attended a check-in at the Philadelphia office of Immigration and Customs Enforcement ("ICE"). *See id.* ¶ 24. At the check-in, ICE agents arrested him and detained him. *See id.* He is presently detained at the Federal Detention Center in Philadelphia. *See id.*

### B.      Procedural History

Moreno Ramirez filed a Petition for a Writ of Habeas Corpus on December 27, 2025. *See* Pet. In his Petition, he brings four claims: (1) a violation of the Fifth Amendment Due Process Clause; (2) a violation of the INA, 8 U.S.C. § 1226(a); (3) a violation of bond regulations, 8 C.F.R. §§ 236.1, 1236.1 and 1003.19 ("Bond regulations"); and (4) a violation of the APA, 5 U.S.C. § 701, *et. seq. See id.* He seeks a declaration that his detention is unlawful and an order

---

[1]     Under INA § 212(d)(5), at the discretion of the Secretary of Homeland Security, noncitizens may be temporarily paroled into the United States "on a case-by-case basis for urgent humanitarian reasons or significant public benefit, any noncitizen applying for admission to the United States." 8 U.S.C. § 1182(d)(5). The Court uses Moreno Ramirez's language regarding parole.

requiring Respondents to release him immediately, or, in the alternative, to hold a bond hearing. *See id.*

Moreno Ramirez also brought a Motion for a Temporary Restraining Order. *See* ECF No. 2. Moreno Ramirez sought an order (1) enjoining the Government from removing or transferring him from the Eastern District of Pennsylvania; (2) enjoining the government from detaining him pursuant to 8 U.S.C. § 1225(b)(2); and (3) ordering his immediate release from custody. *See id.* The Court granted the motion in part on December 30, 2025, enjoining the Respondents from removing or transferring him from this District. *See* Order, ECF No. 6.

The Government filed its Response in Opposition to the habeas petition on December 29, 2025, and amended its Response on December 30, 2025. *See* Resp., ECF No. 3; Am. Resp., ECF No. 5.² The Petition is now fully briefed and ready for review.

### III. LEGAL STANDARDS

#### A. 28 U.S.C. § 2241 – Review of Applicable Law

"[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). The Court is empowered to grant habeas relief to those "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The burden is on a petitioner to show that he is in custody in violation of the Constitution or federal law." *Kashranov v. Jamison*, No. 25-05555, 2025 WL

---

² Courts may decide the issues raised in the petition without a hearing, as they have done in similar recent cases. *See Rodrigues Pereira v. O'Neill*, No. 25-cv-6543, 2025 WL 3516665 (E.D. Pa. Dec. 8, 2025); *Gramajo De Leon v. Jamison*, No. 25-cv-7199, 2025 WL 3724604 (E.D. Pa. Dec. 23, 2025).

3188399, at *3 (E.D. Pa. Nov. 14, 2025) (citing 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941)).

      B.      **The Immigration and Nationality Act – Review of Applicable Law**

            i.      **The Act's Detention Provisions**

The Immigration and Nationality Act of 1952 ("INA") addresses classification and admission questions for noncitizens as well as the process for removal or deportation procedures. *See* 8 U.S.C. §§ 1101 et seq. The two statutory provisions at issue in this case, 8 U.S.C. § 1225 ("Section 1225") and 8 U.S.C. § 1226 ("Section 1226"), arise out of the 1996 amendment to the INA.[3]

Section 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing" and applies to "applicants for admission," who are defined as follows:

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

8 U.S.C. § 1225(a)(1). "Such applicants 'fall into one of two categories: those covered by Section 1225(b)(1) and those covered by Section 1225(b)(2).'" *Kashranov*, 2025 WL 3188399, at *1 (citing *Jennings v. Rodriguez*, 583 U.S. 281, 287-88 (2018)). Section 1225(b)(1) provides for the "[i]nspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled." 8 U.S.C. § 1225(b)(1). Section 1225(b)(2) is a "catchall provision" for "other aliens." *See Jennings*, 583 U.S. at 287.

---

[3]     The INA uses different section numbering than Title 8 of the United States Code. INA Sections 235 and 236 are found at 8 U.S.C. §§ 1225 and 1226, respectively.

Section 1225(b)(2) states that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). By contrast, Section 1226 is titled "Apprehension and detention of aliens," and states that, "[o]n a warrant issued by the Attorney General, an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). This provision allows the Government to detain the arrested alien or to release him on bond or conditional parole.[4] *See id.* The Supreme Court has found that "[Section] 1226 applies to aliens already present in the United States." *Jennings*, 583 U.S. at 303.

### ii. Interim Guidance on Interpretation

For decades, agency officials voiced an intent that aliens present in the United States without inspection be entitled to a bond hearing or release on parole.[5] *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal

---

[4] The exception to this discretionary detention provision is the detention of criminal aliens. *See* 8 U.S.C. § 1226(c).

[5] Around the time of the INA's 1997 revisions, the Immigration and Naturalization Service and Executive Office for Immigration Review voiced an intent that the agencies' procedures for expedited removal apply "only to arriving aliens." *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312-01 at 10314 (Mar. 6, 1997) ("The provisions contained in §235.3(b) of this interim rule will apply for now only to arriving aliens."). Up to that point, the term "arriving aliens" was not defined in statute but was understood, in context, to aid in the INA's distinction between "aliens at ports-of-entry and those encountered elsewhere in the United States." *Id.* at 10313. Today, the term "arriving alien" means "an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means." 8 C.F.R. § 1.2. "An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked." *Id.*

Proceedings; Asylum Procedures ("Inspection and Removal"), 62 Fed. Reg. 10312-01 at 10323 (Mar. 6, 1997)[6] ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."). However, on July 8, 2025, the Department of Homeland Security ("DHS") distributed a notice to all ICE employees, titled "Interim Guidance Regarding Detention Authority for Applicants for Admission," which took a different position. *See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission* ("*ICE Memo: Interim Guidance*"), American Immigration Lawyers Association (AILA), (July 8, 2025), https://perma.cc/N5L5-G9QG. The new policy indicated that DHS, in conjunction with the Department of Justice ("DOJ"), had "revisited its legal position on detention and release authorities" and had "determined that section 235 of the Immigration and Nationality Act (INA), rather than section 236, is the applicable immigration detention authority for all applicants for admission." *Id.* As of July 8, 2025, it became "the position of DHS that such aliens are subject to detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole." *Id.* DHS also took the position that such aliens were ineligible for bond hearings before an Immigration Judge, indicating that "[f]or custody purposes, these aliens are now treated in the same manner that "arriving aliens" have historically been treated." *Id.*[7]

---

[6]    The full citation is: Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312-01 (March 6, 1997) (to be codified at 8 C.F.R. pts. 1, 3, 103, 204, 207, 208, 209, 211, 212, 213, 214, 216, 217, 221, 223, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 243, 244, 245, 246, 248, 249, 251, 252, 253, 274a, 286, 287, 299, 316, 318, and 329).

[7]    *Accord* Rodney S. Scott, Commissioner, U.S. Customs and Border Protection, *Detention of Applicants for Admission* (July 10, 2025), https://perma.cc/8JE2-RM9U ("For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated.").

012626

On September 5, 2025, the Board of Immigration Appeals ("BIA") issued an Opinion consistent with the new DHS policy, holding that Immigration Judges lack authority to hear bond requests by aliens present in the United States who were detained pursuant to 8 U.S.C. § 1225(b), because such aliens are subject to mandatory detention without a bond hearing, regardless of their manner of entry into the country or how long they have resided here. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). In so holding, the BIA acknowledged its novel conclusion, conceding "that for years Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection." *Id.* at 225 n.6 (citing Inspection and Removal, 62 FR 10312-01 at 10323). Importantly, the *Hurtado* decision is not controlling on federal courts determining habeas petitions under 28 U.S.C. § 2241; federal district courts need not defer to its reasoning. *See Ndiaye v. Jamison*, No. 25-cv-6007, 2025 WL 3229307, at *4 (E.D. Pa. Nov. 19, 2025) ("[T]he Court need not defer to the BIA's decision in *Matter of Yajure Hurtado* that mandatory detention under § 1225(b)(2) applies to all applicants for admission, including those who have resided in the United States for years.") (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400-01 (2024)).

C.  **Jurisdiction over 28 U.S.C. § 2241 Petitions and INA Matters – Review of Applicable Law**

Federal district courts have jurisdiction to decide petitions for writs of habeas corpus. 28 U.S.C. § 2241(a) ("Writs of habeas corpus may be granted by . . . the district courts."). "Habeas jurisdiction . . . is not the same thing as subject-matter jurisdiction." *Khalil v. President, United States of America*, Nos. 25-2162 and 25-2357, 2026 WL 111933, at *8 (3d Cir. Jan. 15, 2026) (explaining that the former implicates personal jurisdiction). An evaluation of a "District Court's habeas jurisdiction involves two essential principles of habeas law: (1) the district-of-confinement rule and (2) the immediate custodian requirement." *Id.* at 9. "Whenever a § 2241

habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement. This rule serves the important purpose of preventing forum shopping by habeas petitioners." *Rumsfeld v. Padilla*, 542 U.S. 426, 428 (2004). With respect to subject-matter jurisdiction, however, in some immigration cases, certain provisions of the INA "limit an alien's ability to collaterally attack (challenge) ongoing immigration proceedings through habeas," *Khalil*, 2026 WL 111933, at *8, including: 8 U.S.C. §§ 1252(a), (b)(9), and (g).

Section 1252(a)(2)(B)(ii) prevents a district court from reviewing "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is . . . in [their] discretion." 8 U.S.C. § 1252(a)(2)(B)(ii). Section 1252(b)(9) states that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter, shall be available only in judicial review of a final order." 8 U.S.C. § 1252(b)(9). Section 1252(g) states in part that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

D.  **Due Process Clause – Review of Applicable Law**

"The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the states, from depriving any person of life, liberty, or property without 'due process of law.'" *Dusenbery v. United States*, 534 U.S. 161 (2002); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Fifth

Amendment Due Process] Clause protects."). The Supreme Court has consistently held that "some form of hearing is required before an individual is finally deprived" of such an interest. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). These protections extend to the "millions of aliens within the jurisdiction of the United States." *Mathews v. Diaz*, 426 U.S. 67, 77 (1976) (finding that the "Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these persons from deprivation of life, liberty, or property without due process of law."). However, "[t]he fact that all persons, aliens and citizens alike, are protected by the Due Process Clause does not lead . . . to the conclusion that all aliens must be placed in a single homogeneous legal classification." *Id.* at 78.

To determine whether a claimant's detention violates his due process rights, federal courts apply the balancing test articulated in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The *Mathews* test requires courts to weigh the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. "To access the constitutionality of non-criminal detention, including in the immigration context, the Court assesses and weighs each of these factors to determine if an individual was afforded the appropriate level of procedural due process." *See Arias Gudino v. Lowe*, 785 F. Supp. 3d 27, 44 (M.D. Pa. 2025) (internal citations omitted). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334 (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

## IV. ANALYSIS

### A. Jurisdiction

The Court has jurisdiction over Moreno Ramirez's Petition pursuant to 28 U.S.C. § 2241, which states that "[w]rits of habeas corpus may be granted by . . . the district courts." 28 U.S.C. § 2241(a). The Court has habeas jurisdiction because Moreno Ramirez is confined in this District and has named the Warden of the Federal Detention Center of Philadelphia as the Respondent. *See Padilla*, 542 U.S. at 428. However, the Government argues that 8 U.S.C. §§ 1252(a), (b)(9), and (g) operate to strip the Court of subject matter jurisdiction. For the reasons more thoroughly discussed in *Montes Restrepo*, No. 25-6518, 2026 WL 141803, at *5–6 (E.D. Pa. Jan. 20, 2025), Sections 1252(g), 1252(b)(9) and 1252(a)(2)(B)(ii) are not jurisdictional bars to Moreno Ramirez's Petition.[8]

#### 1. 8 U.S.C. § 1252(g)

The Government argues that Section 1252(g) bars Moreno Ramirez's claim because he challenges the Government's decision to detain him and commence removal proceedings against him. *See* Am. Resp. at 6–7. This statement is not correct. Section 1252(g) is construed narrowly, *see Ndiaye*, 2025 WL 3229307, at *3 (citing *Tazu v. Attorney Gen. U.S.*, 975 F.3d 292, 296 (3d Cir. 2020) and *Reno v. Am.–Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482 (1999)). The Supreme Court has held that Section 1252(g) only refers to actions which "commence proceedings, adjudicate cases, or execute removal orders." *Kashranov*, 2025 WL 3188399, at *3 (citing *Jennings*, 583 U.S. at 294 ("We did not interpret this language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead,

---

[8] This Court's Opinion issued in *Montes Restrepo v. Jamison*, 2026 WL 141803, as well as in *Mirdjalilov v. Federal Detention Center Philadelphia, et al.*, No. 25-07068, ECF No. 9 (E.D. Pa. Jan. 23, 2026), is incorporated in its entirety herein.

[courts] read the language to refer to just those three specific actions themselves.") (citing *Reno*, 525 U.S. at 482–83). In his Petition, Moreno Ramirez does not challenge the commencement of his removal proceedings, the Attorney General's decision to adjudicate his case, or the execution of a removal order. Moreno Ramirez also does not have a final order of removal. Rather, he contests only the Government's authority to detain him under Section 1225(b)(2) and his right to a bond hearing. Section 1252(g) thus does not bar the Court's jurisdiction.

### 2. Title 8 U.S.C. § 1252(b)(9)

The Government maintains that Section 1252(b)(9) bars the Court from hearing Moreno Ramirez's Petition because "Congress has chosen to channel review of immigration proceedings to the courts of appeal." Am. Resp. 7; *see also Kashranov*, 2025 WL 3188399, at *3 (citing *Reno*, 525 U.S. at 482–83). For Section 1252(b)(9) to apply, courts must (1) identify the "action taken or proceeding brought to remove" appellants and (2) satisfy [themselves] that their challenges "aris[e] from" that action or proceeding. *E.O.H.C. v. Sec. U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 184 (3d Cir. 2020); 8 U.S.C. § 1252(b)(9); *Khalil*, 2026 WL 111933, at *10–12. There is no final order of removal for Moreno Ramirez, and his asylum application remains pending. Here, the Court has not been asked to review a final order and thus cannot provide relief alongside such review. *See Montes Restrepo*, 2026 WL 141803, at *5.

Furthermore, Section 1252(b)(9) "does not reach 'claims that are independent of, or wholly collateral to, the removal process,' like 'claims that cannot effectively be handled through the available administrative process.'" *E.O.H.C.*, 950 F.3d at 186 (external citation omitted). Moreno Ramirez's claim is "wholly collateral" to the removal process because it does not challenge the fact of his removal but relates to the legality of his detention, and the Government's authority to detain him without a bond hearing. *See Demirel*, 2025 WL 3218243,

at *2 (citing 8 C.F.R. § 1003.19(d) ("Consideration by the Immigration Judge of an application or request of a respondent regarding custody or bond under this section shall be separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding.")), *see also Kourouma v. Jamison*, No. 26-182, 2026 WL 120208, at *3 (E.D. Pa. Jan. 15, 2026) (finding that *Khalil* did not bar jurisdiction in a case presenting similar facts to the present matter because the petitioner did not challenge the government's "authority to detain him pending a final decision on removal," but only challenged the "[g]overnment's authority to detain him without a bond hearing"). Section 1252(b)(9) does not bar the Court's jurisdiction.

### 3. 8 U.S.C. 1252(a)(2)(B)(ii)

The Government maintains that Moreno Ramirez challenges a discretionary DHS decision. *See* Am. Resp. at 9–10. Section 1252(a)(2)(B)(ii) prevents a district court from reviewing "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is . . . in [their] discretion." 8 U.S.C. § 1252(a)(2)(B)(ii). Challenges to the "extent of the Government's authority under the . . . detention statute," are not challenges to a "matter of discretion." *Ndiaye*, 2025 WL 3229307, at *3 (citing *Zadvydas*, 533 U.S. at 688). Moreno Ramirez does not challenge a discretionary bond decision or a discretionary detention decision. Instead, he challenges the Government's imposition of mandatory detention without a bond hearing under Section 1225(b), on the basis that his status entitles him to a bond hearing or release on parole. Section 1252(a)(2)(B)(ii) does not bar the Court's jurisdiction.

B.  **Merits**

1. **Immigration and Nationality Act (INA)**

The issue facing the Court is whether Moreno Ramirez, a noncitizen present in the United States for over three years, is subject to mandatory detention pursuant to Section 1225(b)(2)(A) or is entitled to a bond hearing or conditional release under Section 1226(a). The vast majority of Section 2241 habeas petitions decided after *Hurtado*, and all of those addressed by the courts in this District to this point, [9] have rejected the BIA's interpretation of these INA provisions and granted habeas relief. *See Montes Restrepo*, 2026 WL 141803, at *9. This Opinion joins them.

Moreno Ramirez contends that the Government is wrongfully detaining him under Section 1225(b)(2)(A), when he should be detained under Section 1226(a) and provided a bond hearing. *See* Pet. at 1. The Government argues that Section 1225(b)(2)(A)'s mandatory detention

---

[9]   There are over thirty cases in this District which have addressed this issue and granted habeas relief. *See Montes Restrepo*, 2026 WL 141803, at *9 n.16. *See, e.g.. Hussain v. O'Neill*, No. 26-35, 2026 WL 66891 (E.D. Pa. Jan. 8, 2026); *Kobilov v. O'Neill*, No. 26-0058, 2026 WL 73475 (E.D. Pa. Jan. 8, 2026); *Diallo v. Bondi*, No. 25-7421, 2026 WL 36534 (E.D. Pa. Jan. 6, 2026); *Kanaut v. Rose*, No. 25-6869, 2026 WL 36690 (E.D. Pa. Jan. 6, 2026); *Lara Cordon v. Jamison*, No. 25-6937, 2025 WL 3756948 (E.D. Pa. Dec. 29, 2025); *Salinas Jaigua v. Jamison*, No. 25-7115, 2025 WL 3757076 (E.D. Pa. Dec. 29, 2025); *Leon v. Jamison*, No. 25-7199, 2025 WL 3724604 (E.D. Pa. Dec. 23, 2025); *Kumar v. McShane*, 2025 WL 3722005; *Rios Porras v. O'Neill*, No. 25-6801, 2025 WL 3708900 (E.D. Pa. Dec. 22, 2025); *Emilcent v. O'Neill*, No. 25-7015, 2025 WL 3709295 (E.D. Pa. Dec. 22, 2025); *Djalilov v. O'Neill*, No. 25-6986, 2025 WL 3689147 (E.D. Pa. Dec. 19, 2025); *See Hurtado v. Jamison*, No. 25-6717, 2025 WL 3678432, at *3 (E.D. Pa. Dec. 18, 2025); *Bhatia v. O'Neill*, No. 25-6809, 2025 WL 3530075 (E.D. Pa. Dec. 9, 2025); *Rodrigues Pereira v. O'Neill*, No. 25-6543, 2025 WL 3516665 (E.D. Pa. Dec. 8, 2025); *Perez Suspes v. Rose*, No. 25-6608, 2025 WL 3492820 at *2 (E.D. Pa. Dec. 5, 2025); *Nogueira-Mendes v. McShane*, No. 25-5810, 2025 WL 3473364 (E.D. Pa. Dec. 3, 2025); *Juarez v. O'Neill*, No. 25-6191, 2025 WL 3473363 (E.D. Pa. Dec. 3, 2025); *Soumare v. Jamison*, No. 25-6490, 2025 WL 3461542 (E.D. Pa. Dec. 2, 2025); *Yilmaz v. Warden of Fed. Det. Ctr. Philadelphia*, No. 25-6572, 2025 WL 3459484 (E.D. Pa. Dec. 2, 2025); *Morocho v. Jamison*, No. 5:25-05930, 2025 WL 3296300 (E.D. Pa. Nov. 26, 2025); *Diallo v. O'Neill*, 2025 WL 3298003; *Centeno Ibarra v. Warden of the Fed. Det. Ctr. Phila.*, No. 25-6312, 2025 WL 3294726, at *3 n.29 (E.D. Pa. Nov. 25, 2025); *Patel v. McShane*, No. 25-5975, 2025 WL 3241212 (E.D. Pa. Nov. 20, 2025); *Demirel*, 2025 WL 3218243; *Kashranov*, 2025 WL 3188399. This list is not complete.

provision applies to Moreno Ramirez. *See* Am. Resp. at 10–11. The Government cites to the BIA's decision in *Hurtado* as support for the assertion that "applicants for admission" are subject to mandatory detention without a bond hearing. *See id.* The parties do not dispute that Moreno Ramirez resided in the United States for three years when he was detained on December 26, 2025. *See* Pet., *see also* Am. Resp. at 3.

The Court applies the same analysis as the Court's decision in *Montes Restrepo*, 2026 WL 141803. First, the Court finds that, although Moreno Ramirez was an "applicant for admission" under Section 1225(a)(1), he was not actively "seeking admission" to the United States when detained. The phrase "seeking admission" implies "ongoing and continuous action rather than a completed or static state." *Kashranov*, 2025 WL 3188399, at *6 (external citations omitted). Second, statutory context also informs that the phrase "seeking admission" refers to encounters at the border, namely ports of entry. *See id.* at *7 (citing 8 U.S.C. § 1225(b)(2)(B) and 8 U.S.C. § 1225(b)(2)(C)). Moreno Ramirez has resided in the United States and has had a pending asylum application since 2023. He is not actively "seeking admission" to the United States. He is and has been here. Thus, Section 1225(b)(2)(A) does not apply to Moreno Ramirez.

In contrast, Section 1226(a) does not apply to aliens "seeking admission"—it applies generally to other types of "aliens." 8 U.S.C. § 1226(a). Prior Supreme Court precedent has applied Section 1226(a) to noncitizens already residing in the United States. *See Cantu-Cortes v. O'Neill*, No. 25-6338, 2025 WL 3171639, at *1 (E.D. Pa. Nov. 13, 2025) (citing *Jennings*, 583 U.S. at 303). Moreno Ramirez has alleged enough facts to demonstrate that Section 1226(a) applies to him. Again, Moreno Ramirez has resided in the United States for over three years. Furthermore, the Government already paroled him into the United States on November 7, 2022. *See* Pet. Ex. C. The Court finds that Moreno Ramirez has been unlawfully detained under

Section 1225(b)(2)(A), while Section 1226(a) governs Moreno Ramirez's detention.

2. **Due Process**

Since the Court finds that Moreno Ramirez's detention falls under Section 1226(a), the Court next considers whether his detention under Section 1225(b)(2)(A) violates his Fifth Amendment due process rights. The Court concludes that the first *Mathews* factor favors Moreno Ramirez's due process claim because he has an "interest in being free from physical detention by one's own government." *Montes Restrepo*, 2026 WL 141803, at *7 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)); *see also Kashranov*, 2025 WL 3188399, at *5. Regarding the second *Mathews* factor, the risk of erroneous deprivation, the merits of Moreno Ramirez's asylum application have not yet been decided. The risk of erroneous deprivation is high without an "individualized assessment." *Montes Restrepo*, 2026 WL 141803, at *8; *see also Kashranov*, 2025 WL 3188399, at *5. Moreover, the Government has not alleged that Moreno Ramirez poses a danger to the community or is a flight risk. *See Montes Restrepo*, 2026 WL 141803, at *7 (finding that when the "government has not alleged circumstances that would indicate that [the petitioner] poses a danger to the community or is a flight risk, the risk of an erroneous deprivation is higher"). The third *Mathews* factor, the Government's interest, weighs in favor of granting habeas relief. *See Montes Restrepo*, 2026 WL 141803, at *8. The Government maintains that it has an interest in "regulating immigration, including by keeping specified persons in detention pending the removal period" and contends that Moreno Ramirez's detention will only last for the duration of his removal proceedings. Am. Resp. at 16 (citing *Demore v. Kim*, 538 U.S. 510, 512 (2003)). As the Court recognized in *Montes Restrepo*, the Government's reliance on *Demore v. Kim* is unconvincing because *Demore* related to deportable *criminal* aliens who fall under 8 U.S.C. § 1226(c), which does not include Moreno Ramirez. *See Montes*

*Restrepo*, 2026 WL 141803, at *8. Moreover, granting Moreno Ramirez a "bond hearing imposes minimal administrative burden" on the Government. *See Kashranov*, 2025 WL 3188399, at *5. The *Mathews* factors indicate that the detention of Moreno Ramirez without a bond hearing violates due process. *See id.* Moreno Ramirez should have been given the opportunity for a bond hearing or conditional parole under Section 1226(a).

## V.  CONCLUSION

The Court, in a manner consistent with other recent opinions in this District, finds that Moreno Ramirez's continued detention under 8 U.S.C. § 1226(a) without a bond hearing violates his Fifth Amendment due process rights and the INA. The Court grants Moreno Ramirez's Petition. Having granted Moreno Ramirez's Petition based on the INA and the Due Process Clause, "it is unnecessary to address the remaining arguments concerning the alleged violations of the APA and the Bond regulations." *Kashranov*, 2025 WL 3166399, at *8.

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge